THOMPSON, Presiding Judge,
concurring in part and dissenting in part.
I concur in all the portions of the main opinion except that pertaining to the loss-reserves issue. As to that issue, I respectfully dissent.
The main opinion, in reaching its conclusion that the trial court’s affirmance of the commissioner’s decision on the issue of loss reserves was arbitrary and capricious, has determined that, in the absence of a showing of harm to the insurance company or its policyholders, conservative loss reserves are reasonable. 64 So.3d at 20 (the trial court’s decision was arbitrary because it was “based only on a dispute between actuaries about loss-reserve amounts with no proof that actual harm to AIM or its insureds will result from the higher loss reserves AIM has opted to use”). This court should not interfere with the department’s oversight of insurance companies in the absence of action that is clearly arbitrary and capricious. See § 27-2-32(e), Ala.Code 1975; and Old Southern Life Ins. Co. v. State Dep’t of Ins., 537 So.2d 30, 31 (Ala.Civ.App.1988). I believe that, with regard to the issue of loss reserves, the majority of this court is substituting its own opinion for that of the department and the commissioner in a matter peculiarly within the expertise of the department, which is charged with overseeing insurance companies in Alabama.
This court has explained
“that judicial deference to an administrative agency tends to insure uniformity and consistency of decisions in light of the agency’s specialized competence in the field of operation entrusted to it by the legislature. Because of the specialized competency and the uniformity of decisions, a court frustrates legislative intent and usurps the discretionary role by stepping in when the agency’s choice is not clearly unreasonable or arbitrary.”
Alabama Dep’t of Pub. Health v. Perkins, 469 So.2d 651, 652-53 (Ala.Civ.App.1985). In cases involving decisions by an administrative agency, this court is required to defer to the agency and presume that its decisions are correct. State Dep’t of Human Res. v. Gibert, 681 So.2d 560, 562 (Ala.Civ.App.1995) (“Our standard of review requires that we review an agency’s decisions with a presumption of correctness, especially where the subject matter is peculiar to the field of competence that has been entrusted to the agency by the Alabama Legislature.”).
*24 In its discussion of the facts underlying the parties’ dispute over the loss-reserves issue, the commissioner’s decision states:
“8. Compliance with SSAP 55:
“In accordance with SSAP 55, the Department recommends that AIM move toward a more reasonable range in recording reserves for losses and loss adjustment expenses. (Exam Rep. pg. 84). AIM contends the range developed by its actuary was deemed appropriate by [its accountants/auditors] and the entire process complied with SSAP 55 (AIM’s Brief, pg. 20). The Department asserts an actuary is the most qualified to offer an opinion regarding compliance with SSAP 55. An actuary has far more training and experience in determining the reasonableness of reserves and the proper designation for these liabilities. In regards to loss and [loss adjustment expenses] reserves, an actuary’s training and experience far exceeds that of an accountant’s.
“Mr. Randall Ross (‘Ross’), ACAS, MAAA, the Department’s consulting actuary, testified the degree of redundancy to [AIM’s] reserves is quite clear and AIM has used a methodology that is based on a [pricing] approach rather than an actuarial reserving approach![13] (Tr. 78). Mr. Ross also testified that in viewing AIM’s financial statements, [AIM] has booked on or around $7 million in reserves year after year and something more in the order of $2 million to $8 million has been appropriate and that a margin of 154 percent is not considered to be reasonable. (Tr. 78, 79). Therefore, AIM is ordered to comply with examination report with respect to SSAP 55.”
The department presented evidence indicating that AIM’s loss reserves were redundant and were 154% above a “reasonable” level of loss reserves, according to applicable accounting and actuarial principles, for the period in question. According to the department’s evidence, a reasonable but still conservative approach to loss reserves would have been approximately 20% above the reasonable estimate of loss reserves as determined by its actuary. In response, AIM presented evidence indicating that its accountants believed that AIM had complied with SSAP 55 and that its conservative approach to loss reserves was appropriate. However, AIM did not present evidence tending to question or challenge the department’s determination of reasonable loss reserves for the period at issue.
AIM and the amici curiae have advanced a number of well-reasoned policy arguments in support of AIM’s conservative approach to loss reserves. In essence, they point out that AIM is a small insurer attempting to provide protection for all possible contingencies for its policyholders and to manage itself in a manner designed to ensure its continued viability as a low-cost source of malpractice insurance for attorneys who otherwise might not be able to obtain that coverage from other insurers.
AIM’s arguments on the issue of loss reserves are, in summary, that a conservative approach to loss reserves is reasonable. Indeed, my first impression of the dispute on the issue of loss reserves was to *25 wonder what objection the department might have to AIM’s conservative management of its loss reserves. Clearly, loss-reserve estimates that are too low to be reasonable are a matter of serious concern. Indeed, the department presented no evidence indicating that AIM was damaged by its conservative estimation of loss reserves.[14] Regardless, I cannot agree with the implicit argument in AIM’s brief that this court should ignore the department’s requirement that loss reserves be reasonable merely because a company’s loss reserves are overstated rather than understated. It is the responsibility of the department, and not of the courts, to regulate and examine insurers in this State.
The department presented evidence indicating that one goal and purpose of the periodic examinations that the department is required to conduct is an attempt to ensure, among other things, that loss reserves are reasonable. The department presented evidence indicating that AIM’s loss reserves were conservative but not reasonable. Although many might question why a conservative approach to loss reserves might not be seen as advisable, that inquiry is not the proper issue before this court. Rather, this court is, and the trial court was, required to determine whether the decision of the commissioner was just and reasonable or whether it was instead arbitrary and capricious. See § 27-2-32(e), Aa.Code 1975; and Old Southern Life Ins. Co. v. State Dep’t of Ins., 537 So.2d at 31. I might not have reached the same decision as did the commissioner. However, keeping in mind the specialized function of the department to regulate all insurers in the State, and after reviewing the record and considering the arguments of the parties, I cannot agree with the main opinion that the commissioner’s decision on the issue of loss reserves was arbitrary and capricious. I would affirm the trial court’s judgment affirming the decision of the commissioner on the issue of loss reserves. Therefore, I dissent from that portion of the main opinion that reverses the trial court’s judgment as to that issue.

. The word "pricing” was omitted from the commissioner’s August 28, 2008, decision. However, the citation to the transcript indicates that the word was inadvertently omitted. Ross’s specific testimony, in pertinent part, was that ”[t]he degree of redundancy in the company’s reserves is quite clear, and they have used the consistent methodology over the years to establish their reserves, a methodology that’s based more on a pricing approach than an actuarial reserving approach.”

. The commissioner noted that the overstatement of loss reserves could affect, among other financial issues, an insurance company's tax liability.